UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| STACEY WASHINGTON | : | DOCKET NO. 16-AP-01403 |
|---|---|---|
| VERSUS | : | JUDGE ELIZABETH E. FOOTE |
| WAL-MART STORES, INC. AND WAL-MART LOUISIANA, LLC | : | MAGISTRATE JUDGE HORNSBY |

**STATEMENT OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF WAL-MART LOUISIANA, LLC'S RENEWED
MOTION FOR SUMMARY JUDGMENT**

Defendant, WAL-MART LOUISIANA, L.L.C. ("defendant" or "Walmart"), pursuant to Local Rule 56.1, respectfully submit that, assuming *arguendo*, only for the purposes of this Motion for Summary Judgment ("Motion"), that plaintiff indeed fell at the Store, the following material facts are not in dispute:

1. Plaintiff's lawsuit arises out of a fall that occurred at the Wal-Mart store located on Mansfield Road in Shreveport, Caddo Parish (the "Store"). Plaintiff cannot remember the time or date of the fall, but believes it was sometime between 2:00 p.m. and 4:00 p.m. on April 24, 2015. Plaintiff was accompanied at the time of the accident by her foster child and a social worker, but cannot remember either one's name. (Petition at ¶¶3-4; Exhibit 1 - Plaintiff's Deposition at pp. 51:5-10; 64:13-14).

2. Plaintiff slipped and fell after having walked about five (5) to seven (7) steps away from a cashier station and toward an exit near the front of the Store. (*Id*. at pp. 54:8-25; 124:12-19).

3. Plaintiff did not see what caused her to fall. (*Id*. at pp. 55:12-24; 95:16-18; 125:21-23).

4. Plaintiff does not know what caused her to fall, but *guesses* that she slipped on something that was liquid because her dress was wet from the fall and also *guesses* it was clear because she did not see anything on the floor before or after the fall. (*Id.* at pp. 55:8-24; 60:9-12; 95:16-25; 96:1-20).

5. Plaintiff does not know how the substance got on the floor. (*Id*. at pp. 94:24-25; 95:1-3).

6. Plaintiff does not know how long the substance had been on the floor. (*Id.* at p. 60:13-17).

7. Plaintiff does not know if it rained that day before she left the Store. (*Id*. at p. 60:18-22).

8. Plaintiff waited in line to check out about ten (10) minutes behind several other customers and during that time she did not see anyone slip or fall. (*Id*. at pp. 123:20-25; 128:20-25; 129:1-15). Plaintiff could see the area where she fell during the time she waited in line and she did not see anyone drop or spill anything during that timeframe. (*Id*. at p. 124:1-11).

9. Plaintiff left the Store immediately after her fall, without first reporting the fall to a Wal-Mart Employee. (*Id*. at p. 56:20-25).

10. The Store has procedures for reporting, investigating and maintaining evidence regarding customer falls, whether or not reported by the customer. (Exhibit 2 - Harnden Affidavit at ¶¶5-6; Exhibit 4, Harnden depo. , pg. 25)

11. The Store has no record of a fall by any customer named Stacey Washington or Stacey Abraham or any reports of any falls at the Mansfield Store that occurred on April 24, 2015 and the first notice that Mr. Harnden received of plaintiff's claim is when she filed the Petition in this case. (*Id.* at ¶¶7-8).

12. All of the Store's employees are responsible for the continuous inspection of the Store for floor hazards, including spills, and are required to immediately remedy the problem if one is found. (*Id*. at ¶9). In addition, the Store routinely follows a strategic maintenance plan, including on April 24, 2015, designed to quickly identify and remove any spills or other hazards ("spill/hazard") in the Store. (*Id*.).

13. It is Store procedure that a spill/hazard must be cleaned or removed ("cleaned/removed") immediately, if possible. (*Id*. at ¶10); (Exhibit 3 - Conway Affidavit at ¶5). If not, an employee must guard the spill/hazard until it is cleaned/removed. (*Id*.).

14. There are various clean-up stations around the Store equipped with paper towels, dry mops, buckets and warning cones for employees' use. (Exhibit 2 - Harnden Affidavit at ¶11). However, the maintenance employees carry mops and paper towels with them in order to quickly remove any spill/hazard from the floor. (*Id*.). Furthermore, managers and maintenance employees are equipped with walkie-talkies that can be used to seek assistance. (*Id*.).

15. The Store does not create or maintain records of clean-ups unless it is associated with an occurrence, such as a slip and fall. (*Id*. at ¶12).

16. The area where plaintiff claims to have fallen, near a cashier station in the front of the Store, is referred to as the "front-end area" of the Store. (*Id*. at ¶13). The front-end area consists of the entrance vestibule areas, customer service areas, leased department entrances and

the areas in the front of the store, including the cashier stations and the areas in front and behind the cashier stations. (*Id*.).

17. Each cashier station is equipped with paper towels and any cashier that sees a spill/hazard is responsible to clean it up or ask for assistance from maintenance, but must guard it until it is cleaned/removed. (*Id*. at ¶14).

18. On April 24, 2015, there were approximately 20 cashiers working in the Store. (*Id*. at ¶15). It is impossible to identify the cashier that checked out plaintiff on April 24, 2015, without a receipt. (*Id*.).

19. The time frame that plaintiff claims to have fallen, 2:00 – 4:00 p.m. on a weekday, is not a "high traffic" time at the Store. (*Id*. at ¶16).

20. On the afternoon of April 24, 2015, Carol Conway was working as a Zone Manager of the front-end area of the Store. (*Id*. at ¶17). Ms. Conway's responsibilities include overseeing employees and operations in her assigned area. (*Id*.). As part of Ms. Conway's overall duties, she must keep a look out for any spill/hazard and have it cleaned/removed according to the Store's procedure. (*Id*.; (Exhibit 3 - Conway Affidavit at ¶4).

21. Various employees are under Ms. Conway's supervision as a Zone Manager of the front-end area, including the cashiers. (Exhibit 3 - Conway Affidavit at ¶3).

22. Ms. Conway has no recollection of the events on April 24, 2015. However, as a Zone Manager, Ms. Conway routinely follows and enforces the Store's reporting procedures. (*Id*. at ¶6). In that regard, had she seen a customer fall on April 24, 2015, she would have reported it. (*Id*.). Furthermore, had someone slipped and fell in the front area, in the view of any of the cashiers, they are required by Store procedures to report the incident. (*Id*.).

23. As a Zone Manager, Ms. Conway also routinely follows and enforces the Store's strategic maintenance procedures designed to quickly identify and remove any spill/hazard. (*Id.* at ¶7). If she had seen a spill/hazard on the floor on April 24, 2015, she would have cleaned it up, or asked for assistance. (*Id.*). As per Store procedure, if she could not immediately clean up the spill/hazard, she would have stood by it until it was cleaned it up. (*Id.*). She expects the cashiers to do the same. (*Id.*).

24. In the event of inclement weather, the Store routinely follows an inclement weather plan wherein some of the employees that service the front-end area of the Store are responsible to put down large floor mats in the entrance area of the Store, as well as caution cones. (Exhibit 2 - Harnden Affidavit at ¶18).

25. As a Zone Manager for the front area, Ms. Conway follows and enforces the Store's written inclement weather plan. (Exhibit 3 - Conway Affidavit at ¶8).

26. As part of the inclement weather plan, greeters, who are employees that stand near the entrances and greet customers, are also responsible for handing out umbrella bags to customers, to monitor the floors for the presence of water, and to keep a dry mop readily accessible to quickly remove water from the floor. (Exhibit 2 - Harnden Affidavit at ¶19).

27. As an additional safety measure, the flooring found in the front of the store is designed to help reduce the risk of falls, even when wet, as it has a non-slip, textured design. Furthermore, the entrance vestibule flooring is textured in a manner to shake water off carts being brought in from the rain. (*Id.* at ¶20).

Shreveport, Louisiana this 13th day of March, 2018.

                                          BLANCHARD, WALKER, O'QUIN & ROBERTS
                                              (*A Professional Law Corporation*)

                                        By:    /s/ Paul M. Adkins
                                                     Paul M. Adkins, LA Bar #14043

                                        333 Texas Street – Suite 700 (71101)
                                        P.O. Drawer 1126 (71163)
                                        Shreveport, Louisiana
                                        318/221-6858
                                        Fax: 318/ 227-2967
                                        E-mail: padkins@bwor.com

                                        ATTORNEYS FOR DEFENDANT,
                                        WAL-MART LOUISIANA, LLC