UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| STACEY WASHINGTON | CIVIL ACTION NO. 16-1403 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| WAL-MART LOUISIANA LLC | MAGISTRATE JUDGE HORNSBY |

MEMORANDUM RULING

Before the Court are cross-motions for summary judgment in a case arising out of an alleged slip-and-fall inside a Wal-Mart store. [Record Documents 29 and 31]. Wal-Mart Louisiana LLC ("Wal-Mart") seeks summary judgment on all issues. [Record Document 29]. Stacey Washington ("Washington") moves for judgment on the issue of liability, arguing that the Court should draw an adverse inference from Wal-Mart's deletion of a surveillance video that may have shown the location where Washington allegedly fell. [Record Document 31]. Because Washington has not raised a genuine issue of material fact regarding Wal-Mart's alleged bad faith, she is not entitled to the requested inference. Without that inference, she has not established a factual dispute as to Wal-Mart's constructive notice of the clear liquid in which she allegedly fell. For this reason, Wal-Mart's motion [Record Document 29] is **GRANTED**, and Washington's motion is **DENIED** [Record Document 31].

I. <u>Background</u>

Washington alleges that she slipped and fell in the Wal-Mart store on Mansfield Road in Shreveport, Louisiana as she was leaving after paying for her purchases. [Record Document 1-5

at 1–2]. Although she did not see the alleged substance in which she slipped prior to falling, she concluded that she must have slipped in a clear liquid because her dress was wet after she was helped off the floor. [Record Document 29-3 at 3, 5, 8–9]. She has also testified that she did not see anyone spill anything on the floor while she was checking out of the store and that cashiers could, when turning to bag items, see the spot on the floor where the liquid was allegedly located. [Record Documents 29-3 at 10–11, 13 and 34-2 at 3].

After returning home, she called the store and told a manager that she "had fallen when [she] was getting ready to leave the store," injuring her hand, knees, and ankle. [Record Document 31-7 at 17]. Washington has since clarified that she told the manager that she fell "in the front end of the store near the cash registers that afternoon." [Record Document 31-2 at 2]. The manager asked her to come into the store to make a statement and identify precisely where she fell, which she did not do because "my attorney told me he would handle all of that." [Record Documents 31-7 at 17 and 31-6 at 32–33]. A few days later, Washington's counsel mailed a letter to the store, which stated in its entirety:

> Please be advised that I have been retained by Ms. Stacey Washington to represent her in connection with a slip and fall injury that occurred at your facility on April 24, 2015.
> Please **immediately** forward me the name of your premise's liability insurer and the policy number.
> Please direct all correspondence and communication with my client to my office.
> If you have any questions, please do not hesitate to contact our office.

[Record Document 29-6 at 70].[1] All security camera footage from the day of the accident was subsequently destroyed pursuant to Wal-Mart's policy to record over surveillance footage on a

---

[1] There is some dispute over whether Wal-Mart received this letter. [Record Documents 31-1 at 1–2 and 35 at 11–12].

2

regular schedule unless specific footage has been marked for retention. [Record Documents 29-4 at 2, 31-1 at 4, and 36 at 9].

After Plaintiff filed her suit, Wal-Mart moved for summary judgment, which this Court denied as premature because discovery had not been completed. [Record Documents 6 and 13]. The discovery deadline has now passed. Both parties have filed oppositions, Wal-Mart has replied, and Washington's deadline to reply has passed, making the motions ripe for adjudication. [Record Documents 34–37].

II. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

3

favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

III. **Law and Analysis**

   A. **Spoliation of Video Evidence**

Before Washington filed this suit, Wal-Mart deleted all surveillance video footage from the day of the accident in accordance with its retention policy. [Record Documents 29-4 at 2, 31-1 at 4, and 36 at 9]. Washington argues that the destruction of this evidence entitles her to summary judgment or to an inference that the footage was unfavorable to Wal-Mart. [Record Document 31-8 at 17–23].[3] Wal-Mart counters that Fifth Circuit precedent prohibits an adverse inference because Wal-Mart had no duty to preserve the footage and because the footage was not destroyed in bad faith. [Record Document 35 at 9–14].

Spoliation is the "destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). In diversity cases, the Fifth Circuit has instructed district courts to apply federal spoliation law, which assigns the burden of proof to the party alleging spoliation. *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005) (*King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)); *Terral v. Ducote*, No. CV 15-2366, 2016 WL 5017328, at *3 (W.D. La. Sept. 19, 2016) (citing *Dixon v. Greyhound Lines, Inc.*, No. CIV.A. 13-179-JWD, 2014 WL 6087226, at *3 (M.D. La. Nov. 13, 2014)). A district court may sanction

---

[3] Washington alternatively requests that derivative evidence be excluded or that the burden of proof be shifted to Wal-Mart. [Record Document 31-8 at 22–23]. At summary judgment, shifting the burden of proof is effectively the same as making an adverse inference, *Davis v. United States*, 402 F. App'x 915, 921 (5th Cir. 2015), so the Court will consider only the availability of an adverse inference. As Washington has identified no evidence that she believes should be excluded as derivative of the destroyed surveillance footage, the Court declines to consider this argument.

a spoliator, although severe sanctions such as an adverse inference instruction require proof of the spoliator's bad faith. *Guzman*, 804 F.3d at 713 (citing *Condrey*, 431 F.3d at 203); *Rimkus*, 688 F. Supp. 2d at 614.

The availability of an adverse inference instruction at trial is relevant on summary judgment. *Schreane v. Beemon*, 575 F. App'x 486, 490 (5th Cir. 2014) (citing *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001), *superseded in part and on other grounds by* Fed. R. Civ. P. 37(e)). Thus, if a fact question exists as to a spoliator's bad faith and the proponent of the spoliation theory produces some evidence suggesting the contents of the spoliated evidence, a court infers that the likely contents of that evidence are adverse to the spoliator. *See id.* Hence, before turning to the substantive question of Wal-Mart's alleged negligence, this Court must first determine whether the record evidence creates a genuine dispute of material fact regarding Wal-Mart's bad-faith spoliation of the surveillance video.

The proponent of a spoliation theory must demonstrate: (1) a duty to preserve the evidence as a result of pending or reasonably anticipated litigation, (2) the destruction of the evidence, (3) the intentionality of that destruction, (4) the relevance of the destroyed evidence, and (5) prejudice resulting from the unavailability of the destroyed evidence. *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 6:11-MD-2299, 2014 WL 2921653, at *23 (W.D. La. June 23, 2014). Wal-Mart destroyed evidence by deleting video that may have existed of the area where Washington allegedly fell. [Record Documents 31-1 at 3–4 and 36 at 6, 9]. Since the deletion was pursuant to Wal-Mart's policy, the destruction was intentional rather than inadvertent. Evidence is relevant when it tends to make a consequential fact more or less probable than it would be without that evidence. Fed. R. Evid. 401. Because Washington cannot prove her claim

unless she can prove that the liquid had been on the floor for a period of time long enough to place Wal-Mart on constructive notice and because the deleted footage may have shown whether the liquid was present before she fell, the video's contents are highly relevant. Her lack of access to this footage is prejudicial as she appears to have no other positive evidence of the presence of the liquid on the floor before her alleged fall.

Although the last four elements of Washington's spoliation claim are satisfied, the parties strongly dispute whether Wal-Mart had a duty to preserve the surveillance footage. [Record Documents 31-8 at 9–11 and 35 at 9–15]. A party has a duty not to destroy or damage evidence once the party "has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713 (citing *Rimkus*, 688 F. Supp. 2d at 612). Determining whether a duty exists is a fact-intensive inquiry that turns on "whether what was done—or not done—was *proportional* to th[e] case and consistent with clearly established applicable standards . . . . [T]hat analysis depends heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable." *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 516–17 (M.D. La. 2017) (quoting *Rimkus*, 688 F. Supp. 2d at 613).

Because the video was destroyed before Washington filed suit, the question is whether her pre-litigation conduct put Wal-Mart on notice of the need to preserve surveillance footage of the area where Washington allegedly fell. The Court finds the Middle District case of *Dixon v. Greyhound Lines, Inc.* instructive. 2014 WL 6087226. In *Dixon*, a Greyhound bus suffered a blowout. *Id.* at *1. While the tire was being changed on the roadside, the jack slipped causing the bus to slam to the ground and Dixon to fall in the aisle. *Id.* Although he called Greyhound to

report that he had been injured, Dixon did not "file[] a formal complaint, inform[] Greyhound of his retention of counsel, threaten[] litigation, or even request[] information relevant to the alleged incident." *Id.* at *3. These facts combined with the absence of contemporaneous documentation of Dixon's injury allowed the court to conclude that Greyhound had no duty to preserve a form completed by the bus driver describing the blowout and its repair. *Id.* at *1, *3.

Washington argues that two incidents triggered Wal-Mart's duty to preserve the surveillance video: her phone call to management on the day of her alleged fall and the May 7, 2015 letter from her attorney. [Record Document 31-8 at 9–11]. Washington's call clearly indicated that she had fallen, though the evidence is unclear as to the degree to which she specified the location in which she fell. [Record Documents 31-2 at 2 and 31-7 at 17]. However, even if she told the manager that she fell "in the front end of the store near the cash registers that afternoon," [Record Document 31-2 at 2], this statement is insufficiently precise to alert Wal-Mart to what evidence it should have preserved. Moreover, as in *Dixon*, her statement neither threatened nor referenced litigation, and she never filed a formal complaint, tending to support Wal-Mart's position that Washington's phone call did not trigger a duty to preserve the surveillance footage.

The letter from Washington's attorney, while indicating that counsel has been retained and requesting information about Wal-Mart's liability insurer, merely asserts vaguely that a "slip and fall injury . . . occurred at your facility on April 24, 2015." [Record Document 29-6 at 70]. Although the parties dispute whether Wal-Mart received the letter, [Record Documents 31-8 at 9–10 and 36 at 1–3], even if it did, the extent of any preservation duty is, as in other discovery contexts, proportional to the facts of the case, *Rimkus*, 688 F. Supp. 2d at 613 (citing Working

8

Grp. on Elec. Document Retention & Prod., The Sedona Conference, *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* § 2 cmt. 2.b (2d ed. 2007)). The Wal-Mart store at issue has over 300 cameras that film twenty-four hours per day. [Record Document 34-5 at 20]. As the letter does not provide a specific time or location for Washington's alleged fall, Washington effectively asserts either a duty to preserve all of the footage from the entire store or a duty to deputize an employee to review this footage to identify the relevant portions for retention. To the extent that Washington alleges that Wal-Mart should have interpreted her attorney's letter in light of her phone call, the duty would still be extensive: preserving all footage from the entire afternoon for the entire front area of the store. While it would not be unreasonable in a slip-and-fall case of this magnitude to require Wal-Mart to preserve video from a specific set of cameras based on a reasonably precise location and time of an accident, it is likely unreasonable to demand the preservation of an uncertain amount of footage over an uncertain area based on a phone call and a letter that neither reference nor threaten litigation. Despite these reservations, the Court will assume, for purposes of this motion, that Wal-Mart had a duty to preserve sufficient video of the front area of the store for the afternoon of April 24, 2015 in order to capture the area where Washington allegedly fell.

The Court's assumption that Washington has satisfied the elements of her spoliation claim does not necessarily entitle her to the sanctions she seeks. To justify an adverse inference, the Fifth Circuit requires proof that the spoliator acted in bad faith when destroying the evidence. *Condrey*, 431 F.3d at 203 (citing *King*, 337 F.3d at 556). The mere fact of evidence destruction is insufficient to support an inference of bad faith when the destruction resulted from application of a "routine policy." *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195,

208 (5th Cir. 2007) (unpublished) (citing *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). This is particularly true when a plaintiff offers no evidence that any person associated with the defendant viewed the footage before it was destroyed. *Schreane*, 575 F. App'x at 490–91 (citing *Bracey v. Grondin*, 712 F.3d 1012, 1015, 1019–20 (7th Cir. 2013)). A lack of knowledge of the contents of a video reduces the likelihood that it was destroyed for the "purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)).

Washington's only evidence of Wal-Mart's bad faith is the fact that the footage was destroyed pursuant to Wal-Mart's policy even though Wal-Mart had the ability to preserve it. [Record Documents 31-5 at 40–41 and 31-8 at 14–16]. Because this spoliation issue is before the Court on summary judgment, the Court must make all inferences in Washington's favor. *Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59). Given the Fifth Circuit's pronouncement in *Russell* that bad faith should not be inferred from evidence destruction pursuant to a "routine policy," 234 F. App'x at 208 (citing *Vick*, 514 F.2d at 737), the Court holds that it cannot infer bad faith merely because Wal-Mart deleted the surveillance footage as part of its standard operating procedure. As Washington has presented no other direct or circumstantial evidence of Wal-Mart's bad faith, the Court finds that she is not entitled to an adverse inference. Therefore, the Court will proceed to analyze her negligence claim under the ordinarily applicable burden of proof.

B.    <u>Washington's Negligence Claim Against Wal-Mart</u>

Because this Court's jurisdiction is based on diversity of citizenship, Louisiana tort law applies. *See James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Erie R.R.*

*Co. v. Tompkins*, 304 U.S. 64 (1938)). Under the Louisiana Merchant Liability Act, a merchant must "exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. Stat. Ann. § 9:2800.6(A) (2009). In addition to the standard elements of any negligence claim, a plaintiff alleging that a condition on the merchant's premises caused her to fall must also prove:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

*Id.* § 9:2800.6(B). A plaintiff's failure to establish any of these elements shields a merchant from liability. *Gregory v. Brookshire Grocery Co.*, 45,070, p. 5 (La. App. 2 Cir. 4/21/10); 35 So. 3d 458, 461 (citing *Rowell v. Hollywood Casino Shreveport*, 43,306 (La. App. 2 Cir. 9/24/08); 996 So. 2d 476).

Here, Wal-Mart argues that Washington cannot prove that it had actual or constructive notice of any liquid on the floor prior to her alleged fall. [Record Document 29-2 at 12–17]. Although she continues to argue that Wal-Mart employees "should have and/or did see the liquid on the floor," [Record Document 31-8 at 23], Washington has provided no evidence from which this Court can infer that any Wal-Mart employee did see the alleged liquid. Hence, to prevail, she must create a fact question regarding Wal-Mart's constructive notice of the alleged spill. The Louisiana legislature has defined constructive notice in this context:

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive

11

> notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. Stat. Ann. § 9:2800.6(C)(1). Interpreting this provision, the Louisiana Supreme Court held that the language "such a period of time" prohibits an inference of constructive notice without evidence that the allegedly hazardous condition existed for some length of time prior to the fall. *White v. Wal-Mart Stores, Inc.*, 97-0393, p. 4 (La. 9/9/97); 699 So. 2d 1081, 1084. Plaintiffs bear the burden of proof on this "temporal element," and constructive notice cannot be established by a negative inference. *See id.* at pp. 4, 6–7; 699 So. 2d at 1084–86.

To carry her burden, Washington must provide some "positive evidence" that the alleged liquid was on the floor prior to her fall. *Id.* at p. 6; 699 So. 2d at 1086. If she has done so, then at summary judgment, this Court may infer constructive notice. Washington offers no evidence of any "unique characteristics of the spill that would indicate that the liquid had been on the floor for some period of time." *Wyatt v. Target Corp. of Minn.*, No. CIV.A. 11-1759, 2012 WL 5866575, at *4 (W.D. La. Nov. 19, 2012). The only evidence from which the Court could conclude that the liquid was on the floor prior to her fall is Washington's testimony that during the ten minutes that she was standing in the checkout line she did not see anyone spill anything in the spot where she later fell. [Record Documents 29-3 at 10–11]. This evidence supports only a negative inference of the liquid's presence prior to her alleged fall. "[I]n the absence of any positive evidence indicating. . . that the [liquid] . . . w[as] on the floor for such a period of time that Wal-Mart should have discovered [its] existence, [Washington] has failed to raise a genuine issue of material fact as to constructive notice." *Davis v. Wal-Mart La. LLC*, No. CV 15-20912, 2016 WL 4077236, at *3 (W.D. La. July 29, 2016).

Rather than offer evidence to satisfy her burden on the temporal element of constructive notice, Washington argues that Wal-Mart, in the exercise of reasonable care, should have known the substance was on the floor before her fall. [Record Document 31-8 at 23–24]. However, her burden is to provide positive evidence "that the liquid was on the floor for [some] length of time." *White*, 97-0393, p. 7; 699 So. 2d at 1086. The evidence on which she relies to establish constructive notice is that cashiers could see the area of the floor where she fell and that Wal-Mart employees are required to watch for and warn customers about spills. [Record Documents 31-2 at 3 and 31-6 at 15–16]. This is not positive evidence that any liquid was on the floor prior to her alleged fall. Any negative inference that can be drawn from her evidence is impermissible under the Louisiana Supreme Court's interpretation of the Merchant Liability Act.

Apparently conscious of the weakness of her evidence regarding the spill's existence, Washington also argues that the shiny nature of Wal-Mart's floors is an independently hazardous condition because it makes certain spills more difficult to see. [Record Document 31-8 at 24–26]. Although the Louisiana Supreme Court has not ruled on whether high-shine finishes are a hazardous condition, lower courts have held that the "mere fact that a floor has a 'high shine' is not sufficient to establish liability on the part of the storekeeper" and that a plaintiff must prove that, as a result of the finish, the floor was unreasonably dangerous. *Kinchen v. J.C. Penney Co.*, 426 So. 2d 681, 683 (La. Ct. App. 1982) (citing *Sims v. Gibson's of Denham Springs, Inc.*, 205 So. 2d 824 (La. App. Ct. 1967)); *see Neal v. Players Lake Charles, LLC*, 2001-0244, pp. 3–4 (La. App. 3 Cir. 6/6/01); 787 So. 2d 1213, 1215–16 (holding that a floor that appears "highly glossy, polished, and shiny" is not a hazardous condition without evidence that the "floor was actually slick"). In the absence of evidence suggesting that the finish or type of tile used by Wal-Mart

13

causes falls in itself, the hazardous condition that Wal-Mart must avoid is having liquids on the floor. As Washington has not established a factual dispute as to Wal-Mart's constructive notice of the liquid, Wal-Mart is entitled to summary judgment.

IV. Conclusion

Because Washington has failed to raise genuine issues of material fact regarding Wal-Mart's bad faith, she is not entitled to an adverse inference. Without that adverse inference, she must raise a fact question regarding Wal-Mart's constructive notice of the liquid in which she allegedly fell. Because she has failed to do so, Wal-Mart's motion for summary judgment [Record Document 29] is **GRANTED**, and Washington's motion for summary judgment [Record Document 31] is **DENIED**.

**IT IS ORDERED** that Washington's claims against Wal-Mart are **DISMISSED WITH PREJUDICE**.

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 17th day of MAY, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE